IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURA ANN ZIMMERMAN,                          6:11-CV-06287-BR

            Plaintiff,                    OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

            Defendant.


JULIANA E. COONS
440 E. Broadway, Suite 140
Eugene, OR 97401
(541) 345-4499

            Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1  - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**LEISA A. WOLF**
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104
(206) 615-3621

       Attorneys for Defendant

**BROWN, Judge.**

      Plaintiff Laura Ann Zimmerman seeks judicial review of the Commissioner's final decision denying her January 28, 2008, application for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

      This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** this matter to the Commissioner consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

      Plaintiff protectively filed an application for SSI as of January 28, 2008, alleging she has been unable to work since August 25, 2006, because of schizophrenia, depression, sleep disorder, anxiety, obsessive compulsive disorder, bipolar disorder, personality disorder, hepatitis B and C, curvature of

2  - OPINION AND ORDER

the spine and neck, degenerative disc disease, overactive bladder, irritable bowel syndrome, a heart condition, damage to both knees, and lower-back injuries. Tr. 109-11, 121-22. Plaintiff's application was denied initially on June 3, 2008, and on reconsideration on March 20, 2009. Tr. 77-80, 86-88.

On April 27, 2009, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). Tr. 89-90.

On September 16, 2010, the ALJ held a hearing on Plaintiff's SSI application. Plaintiff represented herself and Plaintiff and a vocational expert (VE) testified at the hearing. Tr. 48-74.

On November 10, 2010, the ALJ issued a decision that Plaintiff is not disabled and, therefore, is not entitled to SSI. Tr. 13-24.

On or about January 3, 2011, Plaintiff submitted additional statements/argument apparently in response to the ALJ's adverse decision and prior to the action of the Appeals Council upholding the ALJ's decision. Plaintiff's 95-page submission challenges the ALJ's written decision point by point and is included as part of the Administrative Record. Tr. 182-276.

On August 12, 2011, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's November 10, 2010, decision became the final decision of the Commissioner.

On September 20, 2011, Plaintiff filed a Complaint in this Court seeking judicial review of the Commissioner's final decision.

## ADMINISTRATIVE RECORD

**I.    Plaintiff's Testimony.**

Plaintiff testified at the hearing on September 16, 2010, and was not represented by counsel.

**A.  Education.**

Plaintiff has a GED.  Tr. 53.  Since 2002 she has finished 3 1/2 years of college, but she has not obtained a degree. Tr. 54.  She began taking on-line technical courses, but she was unable to complete them because of computer-compatibility issues and because she did not like the program.  Tr. 54.

**B.  Work History.**

In 2003-2004 Plaintiff worked part-time in a work-study program at Lane County Community College.  She described the job as "college desk work" because she mostly did her homework. Tr. 56.

From 1993 until 1998 and in late 2003, Plaintiff worked in clerical, nursing care, telemarketing, packaging, cashiering, and cleaning jobs for one or two months at a time.  Tr. 57, 130.

**C. Health.**

Plaintiff is 5'2" tall and weighs 210 lbs.  Her weight is excessive because she has difficulty digesting food.  Tr. 67-68.

In 2009 Plaintiff underwent surgery for a left-knee replacement.  Tr. 58.  She now also needs replacement surgery on her right knee.  Tr. 59.  Plaintiff was supposed to undergo physical therapy after the surgery, but she did not have any medical insurance or funds to pay for transportation to therapy or for the therapy itself.  Tr. 59.  She was given information on home-therapy exercises, but she "just [does not] focus on it." Tr. 59.

Plaintiff needs "a lot of internal tests done for [her] colon" which has been giving her "problems."  She does not, however, have any funds to pay for the tests.  Tr. 60.

Plaintiff takes ibuprofen occasionally but it makes her drowsy.  She experienced a nervous breakdown in the past and has been prescribed Lexapro, Neurontin, and Seroquel.  Tr. 61. Plaintiff also takes medication for allergies.  Tr. 63.

**D. Living Arrangements/Daily Activities.**

Plaintiff lives with her mother in a one-bedroom apartment. Tr. 64.  She cleans house, her mother cooks and occasionally does the dishes, and Plaintiff and her sister do the shopping.  Tr. 65.  Plaintiff's only hobby is playing computer games.  Tr. 66.

## II.  __Lay-Witness Evidence__.

Plaintiff's sister, Christina Mertens, appeared at the hearing to testify on behalf of Plaintiff, but she was unable to do so because she became ill during the hearing.  Tr. 68.  She later submitted a third-party report in place of her testimony. Tr. 181.

According to Mertens, Plaintiff lives in an apartment with her mother and rarely leaves it.  Tr. 181.  Plaintiff often hears threatening voices and says odd things.  Tr. 181.  She occasionally appears to be "disconnected from reality, living in a world that is different from the one the rest of us live in." Tr. 181.  She is "often paranoid and think[s] . . . people [] are conspiring against her."  Tr. 181.  Mertens tries to limit Plaintiff's contact with Mertens's children because of some of the ideas and thoughts Plaintiff has expressed.  Plaintiff does not have a social life.  Tr. 181.

Plaintiff has had one knee replaced, and it is possible that the other knee will also need to be replaced.  She does not have any health insurance that covers a knee replacement.  Tr. 181. Plaintiff's legs often swell because of water retention, and she sometimes uses a cane or a walker because she has difficulty getting about.  Tr. 181.  Plaintiff uses a special toilet seat because she has difficulty bending her legs.  Tr. 181.  She also has asthma and cannot be around chemicals.  Tr. 181.

Plaintiff needs help for both her physical and mental impairments.  Tr. 181.  She has a hard time taking care of her basic needs including doing the laundry, cooking, and shopping. She is incapable of dealing with everyday matters, is easily confused, and is obsessive.  Tr. 181.  She also is incapable of handling her financial affairs.  Tr. 181.

**III.** **Medical Record.**

    **A.** **Medical Treatment.**

        1.  <u>Timber Valley Medical Center</u>.

In March 2006 Plaintiff complained of fluid in her knees and low back.  On examination there was not an "obvious swelling or increase of [fluid]" in her knees, and she had full range of motion in her knees and low back.  Tr. 279.

In April 2006 Plaintiff continued to complain of knee swelling and pain, and she occasionally heard them "pop.'  She used the bathroom 10-20 times a day.  Plaintiff's history of depression and anxiety also was noted.  Tr. 281.

In July 2007 Plaintiff complained her knees ached and hurt for a long time after any movement.  Tr. 285.  She also complained of upper- and lower-back pain, fibromyalgia, and "many mental disorders."  Tr. 285.

In September 2007 Plaintiff complained of hip and back pain over "the last several years."  Tr. 288.

In November 2006-January 2007 Plaintiff complained

about neck pain that occurs when her neck "pops."  Tr. 290-92.
An MRI revealed mild left-foraminal narrowing secondary to
uncovertebral joint arthropathy.  Tr. 307.  Plaintiff also
exhibited mild degenerative disc changes at C2-3 through C5-6 and
mild degenerative osteoarthritis of the bilateral hips.  Tr. 308.

     In July 2007 an MRI revealed extensive chondromalacia
in the medial compartment of the knee and bony changes consistent
with early osteoarthritis.  Tr. 310.

          2.  <u>Slocum Orthopedics PC - Christopher Walton, M.D.,
              and Craig G. Mohler, M.D.</u>

     In September 2007 Dr. Walton began treating Plaintiff
for knee pain.  His initial treatment involved a cortisone
injection in the right knee.  He recommended Plaintiff begin a
conditioning program and lose weight.  Tr. 404.

     In April 2008 x-rays showed osteoarthritis of the knees
with marginal osteophyte formation in the medial and lateral
compartments.  Tr. 405.

     In June 2008 Dr. Mohler also diagnosed bilateral knee
osteoarthritis and concluded it was worse in the right knee.
Tr. 399.

     In January 2009 Dr. Mohler recommended a bilateral knee
replacement.  Tr. 397.

     In April 2009 Plaintiff underwent a left total-knee
replacement.  Tr. 445.  Two weeks later Plaintiff complained
about numbness in the left-knee area, but she was doing well and

8  - OPINION AND ORDER

was urged to increase her activity to strengthen her knee.
Tr. 443.

In June 2009 Dr. Mohler found Plaintiff's left-knee
arthroplasty was in good alignment without any sign of loosening
or abnormal wear.  Plaintiff continued to have right-knee
arthritis, but she was urged not to undergo replacement surgery
on that knee until her left knee was completely healed.  Tr. 442.

In August 2009 Plaintiff's pain in her left knee had
eased, but she still had discomfort when she stood and continued
to have pain in her right knee.  Tr. 440.

**B.  Medical Consultation.**

1.  <u>Linda Jensen, M.D. - Physical Medicine</u>.

In May 2008 after reviewing Plaintiff's medical records,
Dr. Jensen opined Plaintiff's testimony as to her limitations was
only "partially consistent with the evidence in the file."  Tr.
328.  She opined Plaintiff has the RFC to lift 20 lbs.
occasionally and ten lbs. frequently, to stand or to walk for at
least two hours, to sit for about six hours in an eight-hour
workday, and to push/pull on an unlimited basis.  Dr. Jensen
found Plaintiff should be able to balance and to stoop
frequently, and to climb, kneel, crouch, and crawl occasionally,
but she is limited in reaching in any direction.  Dr. Jensen
concluded Plaintiff should not have concentrated exposure to
fumes, odors, dust, gases, and poor ventilation.  Tr. 323-28.

9  - OPINION AND ORDER

2. <u>Martin Kehrli, M.D. - Internal Medicine</u>.

Dr. Kehrli concurred in Dr. Jensen's opinions as to Plaintiff's limitations.  He noted Plaintiff's physical impairments were "more than non-severe" but did not meet any listings.  Tr. 415-16.

**C. Mental-Health Treatment.**

1. <u>Options Counseling Services of Oregon</u>.

In December 2007 Plaintiff sought treatment for issues related to depression, anxiety, rage, and stress that allegedly had lasted for years causing increased isolation and a lack of energy and motivation as of February 2007.  Tr. 317.  Mental Health Assessor Heather DeVore, MA, diagnosed Plaintiff with Schizoaffective Disorder with a GAF of 50, indicating serious symptoms or any serious impairment of social, occupational, or school functioning.[1]  She recommended mental-health services for Plaintiff "with a fair prognosis."  Tr. 320.

2. <u>Cascadia Behavioral Health</u>.

In September 2008 Plaintiff began group counseling for anger-management issues.  Tr. 394.  She received a "medium" rating for participation in group counseling.  Tr. 391.

In November 2008 Plaintiff reported she had moved into

---

[1] A Global Assessment of Functioning (GAF) score rates a person's psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness.  *See* DSM-1V at 34.

a women's group home, but she complained of having to follow the rules.  She received two write-ups and would have had to move out if she had received a third.  Tr. 351.

**D.    Mental-Health Evaluation.**

1.   <u>Ryan D. Scott, Ph.D. - Psychologist</u>.

In March 2009 Dr. Scott examined Plaintiff on behalf of the Commissioner.  Plaintiff described her family relationships, education, past employment, physical and mental-health issues, alcohol/drug use, and involvement with the law.

During the evaluation Dr. Scott noted Plaintiff was "verbally scattered," had "difficulty focusing," and "took twice as long to complete the intake paperwork as the typical disability client."  Moreover, Plaintiff's paperwork was "disorganized," and her answers to questions were "somewhat rambling."  Tr. 410.

Dr. Scott opined Plaintiff has sleep problems and psychotic features associated with bipolar disorder.  She demonstrated moderate depression associated with loss of interest or pleasure in things, significant weight changes, loss of energy, sleep problems, fatigue, difficulty concentrating, lack of motivation, feelings of unattractiveness, and a sense of being a failure.  She was pessimistic about the future.  Tr. 410.

Dr. Scott opined these issues "substantially interfere[] with Plaintiff's ability to do activities of daily

11 - OPINION AND ORDER

living such as going shopping on her own," "providing her own
housing," and "interacting appropriately with the public."
Tr. 412.  He also opined Plaintiff "would have substantial
difficulties in a work environment and be a substantial
distraction to others."  Tr. 412.  Dr. Scott ultimately concluded
Plaintiff has "the cognitive abilities to perform basic work
tasks *if not impaired by mental health issues*" (emphasis added).
She would, however, "not likely be able and competent to manage
her own finances."  Tr. 412.

     **E.**    **Mental-Health Consultation.**

       1.  <u>Dorothy D. Anderson, Ph.D. - Psychologist</u>.

     Dr. Anderson reviewed Plaintiff's medical records and
found they supported diagnoses of depression, anxiety, and
substance abuse in reported remission.  Tr. 331-40.  Dr.
Anderson, however, opined there was insufficient evidence to
support imposition of any functional limitation as to Plaintiff's
psychological impairments.  Tr. 341.

       2.  <u>Sandra L. Lundblad, Psy.D. - Clinical Psychologist</u>.

     Dr. Lundblad also reviewed Plaintiff's medical records
and diagnosed Plaintiff with affective disorder based on bipolar
syndrome and substance abuse in reported remission based on the
information in those medical records.  Tr. 417-33.

     Dr. Lundblad opined Plaintiff has moderate restrictions
in activities of daily living; maintaining social functioning;

12 - OPINION AND ORDER

and maintaining concentration, persistence, or pace. Dr. Lundblad found Plaintiff is moderately limited in under- standing, remembering, and carrying out detailed instructions; paying attention and concentrating for extended periods; maintaining regular attendance and punctuality; working in coordination with or nearby others without being distracted; completing a normal work-day and performing at a consistent pace; interacting appropriately with the general public; getting along with coworkers without distracting them or exhibiting behavioral extremes; and setting realistic goals and/or making plans independently of others. Tr. 431-32.

**IV. <u>Vocational Expert (VE) Testimony</u>.**

The VE testified Plaintiff does not have an employment history that qualifies as past relevant work. Tr. 69.

The ALJ posed a hypothetical to the VE based on Plaintiff's current age of 47 and her high-school education and limited Plaintiff to a modified sedentary-exertion job that involves standing and walking for up to two hours in an eight-hour workday; sitting for up to six hours in an eight-hour workday; lifting and carrying 20 lbs occasionally and 10 lbs frequently; stooping and balancing frequently; climbing, kneeling, crouching, and crawling occasionally; limited overhead reaching; and avoidance of concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Tr. 69-70. In the hypothetical the ALJ

13 - OPINION AND ORDER

also limited Plaintiff to remembering and carrying out simple, routine tasks in unskilled or semi-skilled jobs.  Tr. 69-70.

Based on the above limitations, the VE opined Plaintiff is capable of performing sedentary, semi-skilled work as a computer-control color-photograph printer operator; light unskilled work as a small-products assembler I; and light semi-skilled work as a small-parts electronics assembler.  Tr. 71-72.

Plaintiff, however, contends she is not capable of doing any of those jobs because she is incapable of working in a public setting.  Tr. 73.


### STANDARDS

The initial burden of proof is on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must prove her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841  (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled under the

Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).
*See also* 20 C.F.R. § 416.920.  Each step is potentially
dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454
F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§ 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454
F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4ii).

In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
Listed Impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  *Stout*, 454
F.3d at 1052.  The criteria for Listed Impairments are enumerated
in 20 C.F.R. part 404, subpart P, appendix 1.  *See also* 20 C.F.R.
§ 416.920(a)(4)(iii).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.

§ 920.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  Assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(v).

Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant is able to perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this

17 - OPINION AND ORDER

burden through the testimony of a VE or by reference to the
Medical-Vocational Guidelines set forth in the regulations at
20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner
meets this burden, the claimant is not disabled.  20 C.F.R.
§ 416.920(g)(1).


### THE ALJ'S FINDINGS

In Step One, the ALJ found Plaintiff has not engaged in
substantial gainful activity since January 28, 2008, the alleged
onset date of her disability.  Tr. 15, 76.

In Step Two, the ALJ found Plaintiff had severe physical
impairments related to bilateral knee arthritis, post left knee
replacement, degenerative disc disease of the cervical spine,
asthma, obesity, and a severe psychological impairment related to
bipolar disorder.  Tr. 15.

In Step Three, the ALJ found Plaintiff's impairments do not
meet or equal any listed impairment.  Tr. 16.

The ALJ found Plaintiff has the physical RFC to perform
sedentary work that involves lifting and carrying 20 lbs
occasionally and 10 lbs frequently; standing and walking for up
to two hours in an eight-hour workday and sitting for six hours
in an eight-hour workday; occasionally climbing ramps, stairs,
ladders, ropes, or scaffolds; occasionally crouching and
crawling; occasionally performing overhead reaching; and

18 - OPINION AND ORDER

frequently balancing and stooping.  Plaintiff should avoid
concentrated exposure to fumes, odors, gases, dusts, and poor
ventilation.  Plaintiff has the mental RFC to understand, to
remember, and to carry out simple, routine tasks.  She should not
work with the general public and should avoid unstructured work;
*i.e.,* jobs working with co-workers that are not assigned or
routine duties.  Tr. 17.  Based on these findings, the ALJ
concluded Plaintiff does not have any past relevant work history.
Tr. 22.

At Step Four, the ALJ found there are jobs that exist in
significant numbers in the national economy that Plaintiff is
capable of performing, including sedentary semi-skilled work
as a computer-controlled, photo-printer operator and light semi-
skilled work as a small-products or electronics assembler.
Tr. 23.

Based on these findings, the ALJ found Plaintiff is not
disabled and, therefore, is not entitled to SSI.  Tr. 23-24.

**DISCUSSION**

Plaintiff contends the ALJ erred by (1) failing to provide
Plaintiff with the opportunity for a full and fair evidentiary
hearing; (2) failing to give clear and convincing reasons for not
crediting Plaintiff's testimony; (3) failing to give germane
reasons for not crediting the lay evidence presented by

19 - OPINION AND ORDER

Plaintiff's sister; (4) failing to consider adequately the opinion of evaluating psychologist Ryan Scott, Ph.D.; (5) failing to obtain an evaluation from a treating or examining physician as to Plaintiff's physical ability to engage in substantial gainful activity; (6) failing to find Plaintiff's physical and mental impairments considered in combination equal a Listed Impairment; and (7) failing to provide a complete hypothetical to the VE.

I.   **Adequacy of the Evidentiary Hearing.**

Plaintiff asserts she was deprived of a full and fair hearing before the ALJ because she was not represented by counsel.

A.   **Standards.**

The procedure at a Social Security hearing "shall be in the discretion of the hearing examiner and of such nature as to afford the parties a reasonable opportunity for a fair hearing." *Richardson v. Perales,* 402 U.S. 389, 400 (1971).  The hearing "should be understandable to the layman claimant, should not necessarily be stiff and comfortable only for the trained attorney, and should be liberal and not strict in tone and operation."  *Id.* at 401.  The ALJ "has an independent duty to fully develop the record, especially where the claimant is not represented."  *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003)(citing *Higbee v. Sullivan*, 975 F.3d 558, 561 (9th Cir. 1992)).  "[I]t is incumbent upon the ALJ to scrupulously and

conscientiously probe into, inquire of, and explore for all the relevant facts.  He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Higbee,* 975 F.3d at 561.

**B.  Analysis.**

At the beginning of the hearing the ALJ explained in detail the hearing process and then engaged in a thorough colloquy with Plaintiff regarding her decision to proceed without counsel. Tr. 51.  The ALJ noted Plaintiff had been represented by counsel in prior proceedings with the Commissioner.  Tr. 51.  The ALJ offered to postpone the hearing and "get it back on track for rescheduling" after Plaintiff had an opportunity to speak to someone about representing her.  Tr. 52.  The ALJ declined to make a specific recommendation to Plaintiff regarding the assistance of counsel.  The ALJ, however, stated:  "[I]t might be something that you feel more comfortable with and want to do, or it might be something you don't want to do."  Tr. 52.  Plaintiff responded as follows:

> You know, your Honor, I've been through this for 14 years, and I've had two lawyers represent me and they wasted their time.  And I've been to several hearings and they just say its right on the cut.  And so I don't really – I was going to get a lawyer through White Bird but I had to be homeless and I wasn't homeless.

Tr. 52.  The ALJ then asked what Plaintiff wanted to do.

21 - OPINION AND ORDER

Plaintiff responded:  "I'm going to try it without it."  Tr. 53.

The Court has reviewed the transcript of the hearing and finds the hearing was fair and afforded Plaintiff a full opportunity to present the facts to the Commissioner.  The Court also finds the testimony of the VE, who was the only one to testify at the hearing other than Plaintiff, was fairly elicited by the ALJ.

Accordingly, the Court concludes on this record that Plaintiff was not denied the opportunity to present all of the facts supporting her claim even though she was not represented by counsel and that Plaintiff made the choice to represent herself voluntarily and knowingly.  Thus, the Court concludes the ALJ conducted a fair hearing that comported with the due process owed to Plaintiff.

## II.  Plaintiff's Testimony.

Plaintiff contends the ALJ did not give clear and convincing reasons for rejecting her testimony regarding the severity of her impairments.

### A.  Standards.

In *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986), the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could

22 - OPINION AND ORDER

reasonably be expected to produce some degree of symptom.  The
claimant, however, need not produce objective medical evidence of
the actual symptoms or their severity.  *Smolen,* 80 F.3d at 1284.
If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can reject
the claimant's pain testimony only if the ALJ provides clear
and convincing reasons for doing so.  *Parra,* 481 F.3d at 750,
(9th Cir. 2007)(citing *Lester,* 81 F.3d 821, 824 (1995)).  General
assertions that the claimant's testimony is not credible are
insufficient. *Id.*  The ALJ must specifically identify "what
testimony is not credible and what evidence undermines the
claimant's complaints." *Parra,* 481 F.3d at 750 (quoting *Lester,*
81 F.3d at 834).

   **B.   Analysis.**

   The ALJ found Plaintiff's medically determinable impairments
could reasonably be expected to cause some of her symptoms, but
the ALJ found Plaintiff's testimony regarding the intensity,
persistence, and limiting effects of those symptoms was not
credible to the extent that they were inconsistent with the ALJ's
finding regarding Plaintiff's RFC.

   In making his credibility determination, the ALJ focused
on medical evidence showing improvement in Plaintiff's level
of pain resulting from her left-knee replacement.  The ALJ
commented Plaintiff's right knee continued to cause her pain, but

Plaintiff did not want further surgery.  Finally, the ALJ noted Plaintiff's neck and shoulder pain were caused by "only 'mild' multilevel degenerative changes and mild foraminal narrowing with no central canal narrowing."

The Court concludes the ALJ gave clear and convincing reasons for finding that Plaintiff's physical impairments, standing alone, do not preclude her from engaging in substantial gainful activity.  For the reasons set forth below, however, the Court concludes the ALJ failed to adequately assess Plaintiff's psychological impairments in combination with her physical impairments when he evaluated Plaintiff's RFC.  The Court, therefore, concludes the ALJ erred when he judged the credibility of Plaintiff's testimony regarding the severity of her physical impairments based on a purported inconsistency with Plaintiff's RFC because the ALJ should have taken into account both Plaintiff's physical and psychological impairments in his evaluation of Plaintiff's RFC.  As a result, the ALJ did not give clear and convincing reasons for rejecting Plaintiff's testimony because he based his rejection on the sole ground that it was incompatible with Plaintiff's RFC.

**III. Lay Evidence**.

Plaintiff contends the ALJ did not give germane reasons for not crediting the lay evidence presented by Plaintiff's sister, Christina Mertens in her third-party report.

**A.    Standards.**

Lay-witness evidence as to a claimant's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

**B.    Analysis.**

The ALJ found Mertens's statements in her third-party report corroborated Plaintiff's testimony that Plaintiff has "some limitations."  The ALJ, however, gave less weight to other statements from Mertens because they "generally reflect the same allegations made by [Plaintiff] that she is completely disabled from all work, allegations that are inconsistent with the objective medical record and [Plaintiff's] range of activities." The Court, however, finds the "objective medical record" tends to substantiate Mertens's evidence.

For instance, Mertens reported Plaintiff was paranoid, hears voices, and says odd things.  Mertens's statements are supported by Dr. Scott's opinion that Plaintiff has psychotic features associated with her bipolar disorder that interfere with her daily activities and that result in a lack of motivation and difficulty concentrating.

The Court notes the ALJ rejected Dr. Scott's opinions, "giving [them] little weight" and instead relied on the opinions

25 – OPINION AND ORDER

of the consulting psychologists.  Tr.  21.  As noted below, however, the Court finds the ALJ erred when he did not credit Dr. Scott's findings and opinion.

Accordingly, the Court concludes the ALJ also erred when he did not credit Merten's lay evidence because the ALJ did not give germane reasons for doing so.

## IV.  Dr. Scott's Opinion.

Plaintiff contends the ALJ erred by crediting the opinions of the consulting psychologists and rejecting the opinion of examining psychologist Dr. Scott.

### A.  Standards.

"An examining or treating [psychologist's] opinion may be rejected by the ALJ when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "'findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). "When the medical opinion of an examining or treating [psychologist] is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (1995).

"A nonexamining [psychologist] is one who neither examines

26 - OPINION AND ORDER

nor treats the claimant." *Id.* at 830.  "The opinion of a nonexamining [psychologist] cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an [examining or treating psychologist]." *Id.* at 831. When a nonexamining psychologist's opinion contradicts an examining psychologist's opinion and the ALJ gives greater weight to the nonexamining psychologist's opinion, the ALJ must articulate his reasons for doing so.  *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999)("Opinions of a nonexamining [psychologist] may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

**B.  Analysis.**

As noted, Dr. Scott examined Plaintiff and opined Plaintiff's psychological issues "substantially interfere[] with her ability to do activities of daily living such as shopping on her own," "providing her own housing," and "interacting appropriately with the public."  As a result, Plaintiff "*would have substantial difficulties in a work environment and be a substantial distraction to others.*"  Tr. 412.  (emphasis added). Dr. Scott opined Plaintiff has "the cognitive abilities to perform basic work tasks *if not impaired by mental health issues*" (emphasis added).  She would, however, "not likely be able and competent to manage her own finances."  Tr. 412.

The ALJ rejected Dr. Scott's opinion on the ground that it was "inconsistent with [Dr. Scott's] exam findings indicating [Plaintiff] has cognitive abilities to perform basic work tasks." Tr. 22.  The ALJ then relied on the contrary opinions of the consulting psychologists.  The Court, however, finds the ALJ's reliance on the consulting psychologists' opinions was unreasonable because the ALJ ignored Dr. Scott's caveat that Plaintiff would be able to work *only* if she was not impaired by mental-health issues.

The Court, therefore, concludes the ALJ erred when the ALJ rejected Dr. Scott's opinion without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

**V.   Treating/Examining Physician Evaluation.**

Plaintiff contends the ALJ erred by failing to obtain an evaluation of Plaintiff's physical impairments to determine her ability to engage in substantial gainful activity; *i.e.,* a treating physician did not provide an opinion as to that issue.

**a.   Standards.**

The ALJ "has an independent duty to fully develop the record, especially where the claimant is not represented." *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003)(citing *Higbee v. Sullivan*, 975 F.3d 558, 561 (9th Cir. 1992)).

**B. Analysis.**

As noted, Plaintiff was not represented by counsel at the hearing before the ALJ, and the record reflects counsel was not retained until February 2011, which was five months after the ALJ issued his decision and six months before the Appeals Council issued its Notice.  Tr. 1, 6, and 24.  Plaintiff contends the ALJ should have obtained a report by an evaluating physician or one of Plaintiff's treating physicians as to the limiting effects of Plaintiff's physical impairments.

The Court, however, is satisfied that the medical record as to Plaintiff's physical impairments, particularly those attributable to her knee surgeries, was sufficiently developed and adequate for purposes of the ALJ's review and subsequent findings as to those impairments without the need for further medical evaluation.

**VI.  Listed Impairment.**

Plaintiff contends the Commissioner erred by failing to find Plaintiff's physical and mental impairments, considered in combination, equal a Listed Impairment.  Plaintiff, however, does not identify a specific Listed Impairment that applies to her physical and mental impairments.

**A.  Standards.**

"[I]n determining whether a claimant equals a listing under step three . . ., the ALJ must adequately explain his evaluation

29 – OPINION AND ORDER

of . . . the combined effects of the impairments." *Marcia v.*
*Sullivan,* 900 F.2d 172, 176 (9th Cir. 1990).

### B.  Analysis.

The ALJ found Plaintiff's physical and mental impairments do
not either singly or in combination meet any Listed Impairment.
Tr. 16.  As noted, however, the Court concludes the ALJ's
analysis of Plaintiff's mental impairments was inadequate.

Accordingly, on this record the Court concludes the ALJ
erred when he found Plaintiff's physical and mental limitations
do not in combination equal a Listing because the ALJ did not
provide legally sufficient reasons supported by substantial
evidence in the record for doing so.

### VII. <u>VE Hypothetical</u>.

Plaintiff contends the ALJ's hypothetical to the VE did not
adequately account for Plaintiff's limitations associated with
either Plaintiff's physical or mental impairments.

### A.  Standards.

A hypothetical question posed to a VE must "include all of
the claimant's functional limitations, both physical and mental."
*Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995).

### B.  Analysis.

Although the ALJ incorporated his findings as to Plaintiff's
physical and mental limitations in his hypothetical to the VE,
the Court has concluded the ALJ's findings as to Plaintiff's

mental impairments and resulting limitations were inadequate.
Accordingly, the Court concludes the ALJ erred when he failed to
adequately incorporate into his hypothetical to the VE the
limitations associated with Plaintiff's mental impairments.  That
error, in effect, was a substantial factor in the ALJ's failure
to fully credit Plaintiff's testimony and the lay evidence
presented  by Plaintiff's sister.

### REMAND

The Commissioner bears the burden of developing the record.
*DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  The duty
to further develop the record, however, is triggered only when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence.  *Mayes v. Massanari*,
276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).
"If additional proceedings can remedy defects in the original
administrative proceeding, a social security case should be
remanded."  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir.
1981).  If, however, "a rehearing would simply delay receipt of
benefits, reversal is appropriate."  *Id*.

Based on this record, the Court, in the exercise of its

discretion, concludes this matter should be remanded for further proceedings to afford the Commissioner the opportunity to address Dr. Scott's opinion properly, consider Plaintiff's ability to engage in substantial gainful activity in light of both her mental and physical impairments, and to incorporate such limitations in a hypothetical to a VE to determine whether there are jobs in the national economy that Plaintiff is capable of performing. *See Harman*, 211 F.3d at 1178.

<u>**CONCLUSION**</u>

For these reasons, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 6th day of December, 2012.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge